IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| THOMAS E. ACKER, | § | Case No. 09-41961 |
| | § | (Chapter 7) |
| Debtor. | § | |
| | § | |
| | § | |
| UNITED STATES OF AMERICA | § | |
| (INTERNAL REVENUE SERVICE), | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Adv. Proc. No. 09-4165 |
| | § | |
| THOMAS E. ACKER, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION**
**REGARDING MOTIONS FOR SUMMARY JUDGMENT**

In this adversary proceeding, the plaintiff seeks a judgment that the defendant's federal income tax debt in the amount of $115,195.62 is nondischargeable pursuant to 11 U.S.C. §§ 521(a)(1)(A) and (C).[1] The defendant denies that he underpaid his taxes or sought to evade or defeat his federal tax income obligations. This matter is before the Court on the defendant's motion for summary judgment, which the defendant filed *pro se*, and the plaintiff's cross-motion for summary judgment. The Court exercises its core jurisdiction over this proceeding, 28 U.S.C. § 157(b)(2)(I), and concludes that the plaintiff's motion should be granted in part.

---

[1] The plaintiff requested a nondischargeable judgment for the total amount of $144,000 in its adversary complaint. This amount included the defendant's principle tax debt as well as penalties and interest. In light of the discharge the debtor has received in this case, the plaintiff is not pursuing its request for penalties (or interest on penalties) for taxes due more than three years prior to the petition date. *See* 11 U.S.C. § 523(a)(7).

1

## I. THE PARTIES' CONTENTIONS

On June 23, 2009 (the "Petition Date"), Thomas Acker (the "Debtor") filed a voluntary Chapter 7 petition in this Court. The Internal Revenue Service ("IRS") initiated this adversary proceeding on September 28, 2009, asking this Court to determine that the Debtor's liability for federal income taxes owed for tax years 1998-2006 is non-dischargeable. In its request for summary judgment, the IRS seeks summary judgment on its claim that the unpaid balance of the Debtor's federal income tax debts for 2002-2006 (totaling $33,025.21) is non-dischargeable under § 523(a)(2)(A) because (1) the taxes for tax year 2006 were due within three years of the petition date; and (2) the taxes for tax years 2002-2005 also fall within the three-year lookback period when all of the days the debtor has been in bankruptcy are taken into account. *See* 11 U.S.C. § 507(a)(8). *See* 11 U.S.C. § 523(a)(2)(A). The IRS additionally seeks summary judgment on its claim that the Debtor willfully evaded the payment of taxes by invoking the automatic stay in successive bankruptcy petitions and, therefore, the unpaid balance of the Debtor's federal income tax debts for 1998-2006 (totaling $115,195.62) is non-dischargeable under 11 U.S.C. § 523(a)(1)(C).

The Debtor asserts that he has fully paid his federal income taxes for tax years 2007-2008. He argues that any outstanding tax debts for prior tax years do not fall within the tolling provision of § 507(a)(8). With respect to the IRS's claim that he has willfully evaded the payment of federal income taxes, the Debtor argues that the totality of the circumstances establish that he has not attempted to evade his tax debts. In the prayer for relief at the conclusion of the Debtor's motion for summary judgment, the Debtor requests that the Court deny the IRS's motion and grant him such other relief as the Court

considers just, including "pain and suffering as a result of Plaintiff's wantonly destructive actions leading to the Defendant's temporary and permanent limitations on activity, potential shortening of life, depression and scarring."

## II. STANDARD FOR SUMMARY JUDGMENT

Rule 7056 of the Federal Rules of Bankruptcy Procedure adopts Rule 56 of the Federal Rules of Civil Procedure, which provides that a party is entitled to summary judgment if the record demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56. A fact is material if it "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). On a motion for summary judgment, the moving party has the burden of demonstrating the absence of any genuine issue of material fact. *Id.* at 249. Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine issue of fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). The trial court must resolve all ambiguities and draw all reasonable inferences in favor of the non-moving party. *Id.* at 587.

Here, the Debtor has not provided the Court with any admissible evidence in support of his request for summary judgment on the plaintiff's claims. The Debtor also has not responded to IRS's cross-motion or provided the Court with any admissible evidence in support of such a response. Thus, the defendant is relegated to his unsworn pleadings. Although this Memorandum Opinion refers to certain allegations in the Debtor's answer in order to facilitate an understanding of the dispute, these allegations

are not competent summary judgment evidence. *See Bookman v. Shubzda,* 945 F.Supp. 999, 1002 (N.D. Tex. 1996) (citing *Solo Serve Corp. v. Westowne Assocs.,* 929 F.2d 160, 165 (5th Cir. 1991)).[2]

## III. RELEVANT BACKGROUND

The Debtor was employed as a systems engineer for Microsoft on the Petition Date. He stated in his sworn schedules that he had been working for Microsoft for 12 years. His gross monthly income on the Petition Date was $7,232.66 according to his schedule of monthly income (Schedule I).

In addition to his employment by Microsoft, the Debtor was engaged in another business for several years prior to bankruptcy. The business expense and depreciation claims the Debtor made on his federal income tax returns for tax years 1998 and 1999 are at the root of this adversary proceeding.

In particular, in 2001, the IRS audited the Debtor's tax returns for tax years 1998 and 1999. The IRS flagged a $45,027 depreciation expense on the Debtor's 1998 tax return as questionable, and the IRS flagged over $60,000 in expenses on the Debtor's 1999 tax return as potentially invalid. The Debtor failed to appear for a meeting with the IRS Examination Division to defend the claimed expenses, and, as a result, the IRS disallowed the unexplained expenses. This disallowance caused a tax liability for each of these years, which has ballooned over time with the accrual of interest and penalties. In addition, from 2000 through 2006, the Debtor incurred federal income tax liabilities each year, because he failed to withhold a sufficient amount from his paychecks.

---

[2] At best, some of the facts asserted in the Debtor's answer may constitute judicial admissions, which are conclusively binding on the party that made them. *White v. ARCO/Polymers, Inc.*, 720 F.2d 1391,1396 (5th Cir. 1983).

The Debtor filed his tax returns on time for tax years 1998 – 2000. Beginning in 2001, the Debtor filed each of his tax returns late. The tardiness of the Debtor's returns ranged from two weeks to one year and three months for tax years 2001 – 2008. The IRS contends that the Debtor's tardiness establishes his intent to evade his tax debts. Notably, however, the account records submitted by the IRS in support of its request for summary judgment show that the Debtor made occasional installment payments to the IRS for his outstanding taxes in 2002 and 2003. In addition, there is no dispute that the Debtor paid more federal income taxes than he owed for tax years 2007 and 2008.

On November 10, 2004, the Debtor made an offer to compromise his 1998-2003 tax liability for $25,200. The Debtor's compromise offer was based on doubt as to the collectability of the approximately $90,000 he owed to the IRS at that time. The Debtor submitted a financial statement to the IRS in which he represented that he had little, if anything, in the way of non-exempt assets and negative cash flow. The financial statement that the Debtor provided to the IRS showed total assets of $33,056.39 and total liabilities of $17,824, for a net worth of only $15,232.99.

The Debtor painted a different picture of his financial prospects to mortgage lenders four months later. On or about March 17, 2005, the Debtor represented to these lenders that his total assets were $140,153.68 and his total liabilities were $2,161.00, for a net worth of $137,992.68. His financial statements to these lenders included assets he had not disclosed to the IRS as well as greater values for the assets that he had disclosed to the IRS. Viewing the record in the light most favorable to the Debtor, it is not clear whether he overstated financial position to the mortgage lenders, or whether he understated his financial position to the IRS – or both.

The Debtor obtained financing for the purchase of a home in Lewisville, Texas, on or around March 17, 2005. The Debtor paid for the home with a primary loan secured by the home and, in lieu of a down payment, a secondary loan also secured by the home. The home is currently worth less than the purchase price.

The Debtor filed a series of six bankruptcy petitions beginning on October 15, 2005 (which is the same date his taxes were due for tax year 2004). His first bankruptcy case was a Chapter 13 case filed in the Eastern District of Texas on the eve of the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). While his case was pending, the IRS closed the Debtor's pending offer to compromise his tax debt. The IRS nonetheless remained stayed from collecting the outstanding tax debt by § 362(a)(6) of the Code.

This Court dismissed the Debtor's Chapter 13 case on August 16, 2006, with prejudice for 180 days after he failed to obtain confirmation of a plan. The Debtor filed another Chapter 13 case on February 15, 2007, in the Northern District of Texas. The Northern District Bankruptcy Court dismissed his second case on April 10, 2007, after he failed to make the first payment under his proposed plan of reorganization as required by § 1326(a)(1) of the Code.

In or around the middle of 2007, the Debtor married. At some point during that year, the Debtor fell behind in his mortgage payments. The Debtor's mortgage holder notified him that it intended to foreclose on his home in January 2008. The Debtor filed a *pro se* petition under Chapter 7 on January 2, 2008, in the Eastern District of Texas. His mortgage holder promptly moved for relief from the automatic stay, which the Debtor opposed. The Debtor, however, failed to request a continuation of the automatic stay.

Since the Debtor's prior case had been pending and dismissed within a year of January 2, 2008, and the Debtor did not obtain a continuation of the stay beyond the 30th day after the filing of the case, the automatic stay terminated 30 days after the petition date (*i.e.*, on February 1, 2008). *See* 11 U.S.C. § 362(c)(3). The Debtor's case was thereafter dismissed by operation of § 521(i), because he failed to file all of the documents required by § 521(a)(1). This Court entered an order evidencing the automatic dismissal of the Debtor's case on February 21, 2008.

The Debtor filed another *pro se* Chapter 7 petition on March 31, 2008, in the Eastern District of Texas. He did not receive an automatic stay in this case, *see* 11 U.S.C. § 362(c)(4), and he did not request an imposition of the stay. The United States Trustee moved to dismiss the Debtor's case on the grounds that it was presumed to be an abusive filing under § 707(b) of the Code, among other grounds. The Court granted the motion at the conclusion of a hearing on June 24, 2008, and entered an order dismissing the case on July 2, 2008.

On July 9, 2008, the Debtor filed yet another *pro se* Chapter 7 petition in the Northern District of Texas. He did not receive an automatic stay in this case, *see* 11 U.S.C. § 362(c)(4), and he did not request an imposition of the stay. His mortgage holder promptly moved for a determination that the Debtor was not protected by the stay. Following an evidentiary hearing on September 29, 2009, the Northern District Bankruptcy Court granted the lender's motion. The Northern District Bankruptcy Court entered an order granting the motion on October 10, 2008. The Debtor thereafter failed to file proof that he had complied with the requirement that he take an instructional course on personal financial management. Accordingly, on November 13, 2008, the

7

Northern District Bankruptcy Court closed his case without entering a discharge. The Debtor subsequently represented to the IRS that he had received a discharge from the Northern District Bankruptcy Court.

As previously discussed, the Debtor filed his current bankruptcy case in this Court on June 23, 2009. He did not receive an automatic stay in this case, *see* 11 U.S.C. § 362(c)(4), and he did not request an imposition of the stay. The Chapter 7 trustee conducted a meeting of creditors on July 31, 2009, pursuant to § 341 of the Code. The Debtor testified at the meeting of creditors that he was living in an apartment because his mortgage holder had foreclosed on his home. He testified that the former home was not part of his estate and that he filed for bankruptcy in order to discharge any unsecured obligation relating to his real estate debt. The Debtor also testified that he filed his current Chapter 7 petition in order to discharge his debt to the IRS.

On October 8, 2009, this Court entered a general Chapter 7 discharge in the Debtor's current bankruptcy case. The IRS concedes that the penalties and interest relating to the tax debt for years 1998-2005 were for taxable years more than three years pre-petition, and, therefore, have been discharged.[3] The plaintiff seeks a summary judgment the Debtor owes the IRS a non-dischargeable debt in the amount of $115,195.62 for his 1998-2005 income tax and interest and his 2006 income tax, interest, and penalties.

---

[3] Section 523(a)(7) states that debts for fines, penalties, or forfeitures for the benefit of a governmental unit that are not compensation for actual pecuniary loss are excepted from discharge unless (A) the penalties relate to dischargeable taxes " or (B) [are] imposed with respect to a transaction or event that occurred before three years before the date of the filing of the petition." 11 U.S.C. § 523(a)(7)(A)-(B). Thus, even if the underlying tax is nondischargeable, tax penalties for taxable years more than three years pre-petition may be discharged. *See Hosack v. IRS (In re Hosack)*, 282 Fed.Appx. 309, 316 fn. 12 (5th Cir. 2008).

8

## IV. LEGAL DISCUSSION

A Chapter 7 debtor is generally granted a discharge of all unsecured debts that arose before the filing of the bankruptcy petition except as provided in § 523(a) of the Code. *See* 11 U.S.C. § 727(b). Sections 523(a)(1)(A) and 523(a)(1)(C) provide that an individual debtor may not discharge certain types of taxes.[4] Under 523(a)(1)(A), taxes of the kind and for the periods specified in §§ 507(a)(2) or 507(a)(8) are nondischargeable, even if the IRS never filed a claim for those taxes. *See* 11 U.S.C. § 523(a)(1)(A). Alternatively, § 523(a)(1)(C), which exempts from discharge a tax "with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat." 11 U.S.C. § 523(a)(1)(C).

### A. Section 523(a)(1)(A) (Tolling)

Section 523(a)(1)(A) excepts from discharge a tax of the kind specified within § 507(a)(8). As relevant to this case, § 507(a)(8) provides for the priority treatment of a claim for income tax for a taxable year ending on or before the date of the filing of the petition if the tax return was due (including extensions) after three years before the date of the filing of the petition. This provision is often referred to as the "three-year lookback provision." In *Young v. U.S.*, 535 U.S. 43, 52 (2002), the Supreme Court held that the three year lookback period is subject to traditional principles of equitable tolling and, therefore, is "tolled during the pendency of a prior bankruptcy petition."

---

[4] Debts excepted from discharge under § 523(a)(1)(A) and (C) differ from some other debts excepted under § 523 in that debts excepted under § 523(a)(1)(A) and (C) are excepted automatically and a creditor's failure to object to the discharge does not affect the dischargeability or non-dischargeability of the debt. In contrast, pursuant to § 523(c)(1), debts specified in § 523(a)(2), (4), and (6) are automatically discharged "unless, on request of the creditor to whom such debt is owed, and after notice and a hearing, the court determines such debt to be excepted from discharge." 11 U.S.C. § 523(c)(1).

Congress codified the Supreme Court's holding in *Young* as part of BAPCPA. Section 507(a)(8) now expressly provides that the three-year lookback period is tolled during the pendency of a bankruptcy case. In relevant part, § 507(a)(8) now states "an otherwise applicable time period specified in this paragraph shall be suspended for … any time during which the stay of proceedings was in effect in a prior case under this title …." 11 U.S.C. § 507(a)(8). Section 507(a)(8) further tolls the three-year lookback period "for any period in which a governmental unit is prohibited under applicable nonbankruptcy law from collecting a tax as a result of a request by a debtor for a hearing … plus 90 days." *Id.*

### 1. Tax Year 2006

In this case, the date that is three years before the petition date is June 23, 2006. The Debtor's taxes for tax year 2006 were due on April 15, 2007. This due date falls within three years of the petition date. Thus, the discharge entered in this case did not discharge the Debtor's obligation to pay his 2006 federal income taxes, *see* §§ 507(a)(8) and 523(a)(1)(A), or the Debtor's obligation to pay any penalties relating to tax year 2006, *see* 11 U.S.C. § 523(a)(7).

### 2. Tax Year 2005

The Debtor's taxes for tax year 2005 were due on April 15, 2006. This falls eight days outside of the three-year lookback period set forth in § 507(a)(8)(A)(i). The Debtor, however, was in bankruptcy on April 15, 2006 and was enjoying the protection of the automatic stay. He continued to enjoy the protection automatic stay for four more months – until his case was dismissed on August 16, 2006. The existence of the automatic stay tolled the three-year lookback period, *see* 11 U.S.C. § 507(a)(8), and the

discharge entered in this case did not discharge the Debtor's obligation to pay his 2005 federal income taxes, *see* 11 U.S.C. § 523(a)(1)(A).

### *3. Tax Year 2004*

The Debtor's taxes for 2004 were due on October 15, 2005, which is approximately eight months outside of the three-year lookback period. The Debtor, however, filed for bankruptcy on the date his 2004 taxes were due and enjoyed the protection of the automatic stay until his case was dismissed almost exactly ten months (305 days) later on August 16, 2006. The Debtor filed for bankruptcy again on February 15, 2007. He enjoyed the protection of the automatic stay for 54 days until his case was dismissed on April 10, 2007. The Debtor filed another bankruptcy case on January 2, 2008, but enjoyed the protection of the automatic stay for only 30 days in that case as a result of the changes the BAPCPA made to the application of the automatic stay in successive cases. The Debtor did not receive the protection of the stay in any of the other cases he filed during 2008. When the time the debtor was protected by the automatic stay is taken into account (plus 90 days for each time the stay was imposed), the Debtor's obligation to pay his 2004 federal income taxes falls within the three-year lookback period. Thus, the Court concludes that the discharge entered in this case did not discharge the Debtor's obligation to pay his 2004 federal income taxes, *see* 11 U.S.C. § 523(a)(1)(A).

### *4. Tax Years 2002 - 2003*

The Debtor's taxes for 2003 were due on April 15, 2004, and his taxes for 2002 were due on August 15, 2003. The IRS asserts that the Debtor has been in bankruptcy for 1079 days since October 15, 2005, and that the Court should use each of these days to

11

extend the three-year lookback period under § 507(a)(8). The IRS does not cite any authority in support of its argument that the lookback period can be extended by the pendency of a bankruptcy case without regard to whether or what extent the case resulted in the imposition of a stay. Section 507(a)(8), by its terms, only extends the lookback period for the "time during which the stay of proceedings was in effect…" Here, as a result of the Debtor's serial filings and the dismissal of several of his cases, the Debtor did not receive the benefit of a stay for the entirety of all of his bankrkuptcy cases. The IRS has failed to show that it is entitled to a summary judgment that the three-year lookback period has been extended 1079 days so as to except from discharge the Debtor's obligation to pay his taxes for tax years 2002-2003.[5]

### B. Section 523(a)(1)(C) (Willful Evasion)

In *In re Bruner,* 55 F.3d 195 (5th Cir. 1995), the Fifth Circuit approved a three-prong test for determining whether a tax liability is dischargeable pursuant to § 523(a)(1)(C). In the case of a debtor who is financially able to pay his taxes, a debt is non-dischargeable when the debtor: (1) had a duty to pay the taxes at issue; (2) knew that he had that duty; and (3) voluntarily and intentionally chose not to pay. *Id.* at 197. Whether a debtor acted "willfully" for purposes of § 523(a)(1)(C) is a question of fact which must be determined in light of the totality of circumstances of the case. *See, e.g., USA v. Fegeley (In re Fegeley)*, 118 F.3d 979, 983 (3rd Cir. 1997).

---

[5] The motion by the IRS contains facts relating to the due process hearings requested by the Debtor and the resulting stay of the IRS's collection efforts. However, in its summary judgment argument, the IRS does not address the effect the due process hearings on the three-year lookback period. *See* 26 U.S.C. § 6330(e). Moreover, the affidavit submitted by the IRS in support of its motion is inconsistent with the other evidence inasmuch as the tax account statements suggest that the Debtor may have requested more due process hearings and on different dates than discussed in the affidavit.

Here, when viewed in the light most favorable to the Debtor, the uncontested facts do not support summary judgment in favor of the IRS on its § 523(a)(1)(C) claim. The Debtor filed tax returns and paid taxes for each of the years in question. There is no evidence that he failed to cooperate with the IRS. The only evidence that he may have concealed or hidden assets, or attempted to mislead the IRS, appears to be the conflicting financial statements that he provided to the IRS and mortgage lenders in 2005. As previously discussed, however, it is unclear whether he understated his assets to the IRS or overstated his financial position to the mortgage lenders. Further, to the extent the IRS argues that the Debtor used the automatic stay to prevent the IRS from collecting his tax debts, the IRS fails to acknowledge that the Debtor did not have the benefit of the automatic stay in several of his bankruptcy cases. The IRS's argument also does not take into account the difficulty the Debtor has experienced with his mortgage lender and the foreclosure on his home. These financial difficulties suggest that the Debtor may not have been able to pay his debts to the IRS during the time in question.

The IRS also complains that the Debtor attempted to mislead the IRS by representing that he received a discharge in one of his prior bankruptcy cases. The summary judgment evidence does not establish, as a matter of law, whether the Debtor made a deliberate misrepresentation to the IRS or genuinely misunderstood the bankruptcy process. The Bankruptcy Code is complicated -- as the IRS's own misreading of § 523(a)(1)(A) makes clear.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that the IRS has established, as a matter of law, the non-dischargeability of the Debtor's tax debt for tax years 2004 – 2006

13

pursuant to 11 U.S.C. § 523(a)(1)(A). The Court further concludes that the IRS has not established, as a matter of law, the non-dischargeability of the Debtor's tax debt for tax years 1998 – 2006 pursuant to 11 U.S.C. § 523(a)(1)(C). Genuine issues of material fact exist as to whether the Debtor has willfully evaded payment of his tax debts. The Court will enter a separate Order consistent with this Memorandum Opinion.

Signed on 9/7/2010

*Brenda T. Rhoades*    SR
HONORABLE BRENDA T. RHOADES,
CHIEF UNITED STATES BANKRUPTCY JUDGE