
EOD
09/28/2010

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: § | CASE NO. 09-41961 | |
| THOMAS E. ACKER, § | | |
|     Debtor. § | CHAPTER 7 | |

| | | |
|---|---|---|
| § | | |
| UNITED STATES OF AMERICA, § | | |
|     Plaintiff, § | | |
| § | | |
| vs. § | ADVERSARY NO. 09-04165 | |
| § | | |
| THOMAS E. ACKER, § | | |
|     Debtor/Defendant. § | | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Plaintiff United States of America initiated this proceeding against the Debtor-Defendant Thomas E. Acker ("Acker") seeking a determination that Acker's federal income tax liability for tax years 1998 - 2006 is non-dischargeable pursuant to 11 U.S.C. § 507(a)(8) and 11 U.S.C. § 523(a)(1)(A) and (C). The Court granted partial summary judgment to the United States and tried the remainder of the United States' complaint on September 7, 2010. The Court exercises its core jurisdiction over this proceeding, *see* 28 U.S.C. § 157(b)(2)(I), and makes the following findings of fact and conclusions of law, *see* FED. R. BANK. P. 7052.

## FINDINGS OF FACT

### I. Procedural Background

1. In its adversary complaint, the United States seeks a determination that Acker's federal income tax liability for tax years 1998 - 2006 is non-dischargeable pursuant to 11 U.S.C. § 523(a)(1)(C) due to his alleged willful attempts to evade or defeat

1

the tax. The United States also seeks a determination that Acker's 2002 - 2006 federal income tax is non-dischargeable under the tolling provisions of 11 U.S.C. §§ 507(a)(8) and 523(a)(1)(A).

2. As of June 23, 2009, bankruptcy petition date, the balance of Acker's federal income tax liabilities was $144,343.03. This amount included the defendant's principle tax debt as well as penalties and interest.

3. In light of the discharge the debtor has received in this case, the plaintiff is not pursuing its request for penalties (or interest on penalties) for taxes due more than three years prior to the petition date. *See* 11 U.S.C. § 523(a)(7). Thus, as of April 15, 2010, the balance due on Acker's 1998 - 2006 federal income tax debt was $115,195.62. This is the amount that the United States asks this Court to declare non-dischargeable.

4. Prior to trial, the Court entered a Memorandum Opinion and Order granting, in part, the United States' request for summary judgment. The Court concluded that the IRS had established, as a matter of law, the non-dischargeability of the Debtor's tax debt for tax years 2004 – 2006 pursuant to 11 U.S.C. §§ 507(a)(8) and 523(a)(1)(A). The remainder of the claims asserted by the United States proceeded to trial.

5. Acker has appeared *pro se* in this proceeding. On the first day of trial, he stated at the podium that he intended to invoke his privilege against self-incrimination under the Fifth Amendment of the United States Constitution. The Court attempted to swear in Acker so that he could assert his Fifth Amendment privilege as to specific questions propounded by the United States. Acker refused to be sworn, stating that he could not affirm that he would testify truthfully.

6. On the second day of trial, Acker called himself as a witness. The Court

allowed Acker to testify in the narrative. Acker testified in his narrative that he was not living at the various addresses he used as his home address in his income tax returns.

7. On cross-examination, Acker admitted that he provided the IRS with false statements of his personal address and business addresses in his 1999 tax return. However, when asked about his home address, income and other items listed on his 1999 tax return and subsequent tax returns, Acker repeatedly denied any knowledge or invoked his Fifth Amendment privilege. Acker invoked his Fifth Amendment privilege when asked whether he knew that he had a duty to pay his federal income taxes. Acker also invoked his Fifth-Amendment privilege when asked whether he has submitted false financial statements to the IRS or filed false tax returns.

## II. Factual Background

### A. Acker's Income Tax Liability

8. On the dates indicated below, a delegate of the Secretary of the Treasury made assessments against, and gave notice and demand to, Acker for his unpaid income taxes, penalties, and interest in the amounts and for the tax years shown in the following table:

| Year | Assessment | Unpaid |
|------|------------|--------|
| 1998 | 08/12/2002 | $28,314.55 |
| 1999 | 08/12/2002 | $33,862.78 |
| 2000 | 11/26/2001 | $22,641.85 |
| 2001 | 12/16/2002 | $25,483.01 |
| 2002 | 04/19/2004 | $ 7,255.74 |
| 2003 | 06/07/2004 | $ 9,837.61 |
| 2004 | 02/06/2006 | $10,511.96 |
| 2005 | 06/11/2007 | $ 4,550.45 |
| 2006 | 06/04/2007 | $   869.45 |

9. Acker filed his 2001, 2002, 2003, 2004, 2005, 2006, 2007, and 2008

income tax returns late. The dates the returns were due and the dates they were actually filed are shown in the following table:

| Tax Year | Return Filed | Due Date | Time Late |
| --- | --- | --- | --- |
| 2001 | 11/21/02 | 10/15/02 | One month |
| 2002 | 03/22/04 | 8/15/03 | Seven months |
| 2003 | 05/3/04 | 4/15/04 | Two weeks |
| 2004 | 12/22/05 | 10/15/05 | Two months |
| 2005 | 5/9/07 | 4/15/06 | One year |
| 2006 | 5/9/07 | 4/15/07 | Three weeks |
| 2007 | 7/22/09 | 4/15/08 | One year & 3 months |
| 2008 | 7/22/09 | 4/15/09 | Three months |

10. In February of 2001, the IRS Examination Division began an investigation of Acker's 1998 and 1999 income tax returns. Acker failed to appear for a scheduled meeting with IRS Examination Division to explain the expenses he had claimed on the Schedule C he had submitted with his 1998 tax return. His non-appearance resulted in the disallowance of $45,027 in claimed expenses.

11. With respect to his 1999 tax return, the IRS audit report showed that Acker claimed business expenses and depreciation totaling in excess of $30,000 for which there was no business purpose, as well as over $3,000 in unreported income from stock sales. The IRS imposed accuracy-related and underpayment of tax penalties for the 1999 tax year. With respect to an $18,023 Schedule C expense claimed on his 1999 tax return, neither Acker nor his accountant could explain it, so the IRS disallowed it. The IRS also disallowed a claimed $9,385 expense because Acker was not allowed to depreciate his home, automobile, and other items used for personal purposes.

12. In the audit of both his 1998 and 1999 income tax returns, Acker failed to provide all of the information requested by the IRS Examination Division. Acker's self-serving testimony that the IRS Examination Division did not request information and

4

documents from him was not credible or supported by documentary or other evidence.

13. From 1998 – 2006, Acker earned an adjusted gross income in the average amount of $77,000. His total adjusted gross income during this period was $850,172. Although Acker testified that health problems have negatively impacted his job performance, and that he is likely to lose his job with Microsoft in the near future, he did not provide any documentary or other evidence in support of his testimony.

### B. Acker's Offer-in-Compromise to the IRS

14. On November 10, 2004, Acker made a $25,200 offer to settle his 1998-2003 federal income tax on the basis of "Doubt as to Collectability." He signed the offer on October 26, 2004. His tax debt at this time totaled approximately $90,000.

15. With his offer in compromise, Acker submitted an IRS Form 433-A, which is a financial statement for individuals. On February 10, 2006, the IRS sent Acker a letter telling him that his offer was closed, since the IRS could not consider an offer in compromise while his bankruptcy (filed October 15, 2005, discussed below) was pending.

16. On his Form 433-A, Acker gave his home address as 1333 W. Campbell, No. 106, Richardson, Texas. This address is, in reality, a packaging service. The address where he was actually living at that time was 4607 Briar Oaks, Dallas, Texas. The Briar Oaks home consisted of more than 4,600 square feet and was valued at more than $700,000.

17. At trial, Acker testified that his girlfriend owned the Briar Oaks home. He testified that he was living with her and paying her rent in October of 2004. He testified that he moved out in 2005 and purchased a home for himself in Lewisville, Texas.

### C.     Acker's Purchase of a New Home

18.    About four months after Acker offered to settle his $90,000 federal income tax debt and submitted his Form 433-A financial statement to the IRS, on or about March 22, 2005, Acker purchased a brand new house for $182,467.00 at 2917 Muirfield Drive in Lewisville, Texas from Centex Homes. To purchase this house, he secured two mortgages from CTX Mortgage Company, LLC -- one in the amount of $145,950.00, and the other in the amount of $36,450.00.

19.    In connection with this home purchase, Acker gave the lender two uniform residential loan applications dated March 17, 2004. He did not disclose his $90,000 tax debt on either of these forms. He listed total assets of $140,153.68; total liabilities of $2,161.00, and a net worth of $137,992.68. By contrast, the Form 433-A financial statement that Acker gave to the IRS on November 10, 2004 showed total assets of $33,056.39 and total liabilities of $17,824, for a net worth of only $15,232.99.

20.    The financial statement Acker gave to the mortgage company included assets not disclosed to the IRS. With respect to the assets he did disclose to the IRS, he undervalued those assets in comparison to the financial statements he gave to the mortgage company, as follows:

|  | **IRS Form 433-A** | **Mortgage Loan Appl.** |
|---|---|---|
| **Assets** | | |
| Bank accounts | $1,289.07 | $11,615.90 |
| Cash | $57.00 | $ 2,000.00 |
| Fidelity/Microsoft 401K | $24,710.92 | $21,766.46 |
| Fidelity Investments | not listed | $ 2,270.78 |
| Microsoft 401K 40% | not listed | $14,510.54 |
| Furniture/personal effects | $2,000.00 | $35,000.00 |

| | | |
|---|---|---|
| Vested interest in retirement fund | not listed | $45,000.00 |
| Computer | $5,000.00 | not listed |
| Acura vehicle | (listed as liability only) | $10,000.00 |
| Total assets .................................... | $33,056.99 | $140,153.68 |

**Liabilities:**

| | | |
|---|---|---|
| 2003 Acura lease balance | $17,824.00 | not listed |
| CB&T | not listed | $1,394.00 |
| Chase NA | not listed | $767.00 |
| Total liabilities ............................. | $17,824.00 | $2,161.00 |
| **Net worth** ................................... | **$15,232.99** | **$137,992.68** |
| Monthly income | $6,785.00 | $7,324.84 |
| Monthly expenses | $9,328.00 | $1,200.00 (rent only) |
| Monthly cash flow | (-$2,543.00) | Not shown |

21.  Acker insinuated at trial that he lied on his mortgage application rather than on his IRS Form 433-A.

### D.  Acker's Prior Bankruptcy Cases

22.  Acker has been employed by Microsoft since 1997. He began working for Microsoft on a contract basis, and Microsoft later hired him as a full-time employee.

23.  Acker has filed seven bankruptcy cases since 1993. He has filed five cases since 2005. In his recent petitions, however, he only disclosed that he had filed one prior case. The case numbers and dispositions of Acker's prior cases are as follows:

| **Case No.** | **District** | **Filing Date** | **Disposition** |
|---|---|---|---|
| 09-41961-7 | Eastern | 06/23/09 | Closed; discharge granted 10/8/09 |
| 08-33341-7 | Northern | 07/09/08 | Closed without discharge on 11/13/08 |
| 08-40790-7 | Eastern | 03/31/08 | Dismissed for abuse on 7/02/08 |
| 08-40006-7 | Eastern | 01/02/08 | Dismissed for failure to file required information on 2/21/08 |
| 07-30797-13 | Northern | 02/15/07 | Dismissed for failure to make 1st plan payment on 4/9/07 |

| | | | |
|---|---|---|---|
| 05-48345-13 | Eastern | 10/15/05 | Dismissed with prejudice for 180 days for delay on 8/16/06 |
| 93-36525-7 | Northern | 09/21/93 | Chapter 7 discharge granted 01/04/94 |

24. In the schedules Acker filed in some of these cases, Acker claimed that the Muirfield home was located in Eastern District of Texas. In the schedules he filed in other cases, he claimed that the Muirfield home was located in the Northern District of Texas. In the present bankruptcy case, Acker manufactured venue by obtaining a post office box in the Eastern District of Texas and listing the post office box as his residence.

25. Acker did not make payments to unsecured creditors in connection with any of his bankruptcy cases. He filed five bankruptcy cases from 2005 through 2008, as described *supra*, in order to delay the IRS' collection efforts and not for legitimate bankruptcy purposes. Acker's testimony that he initiated a Chapter 13 case in 2005 due to health problems and associated financial difficulties, and that he did not authorize the filing of a second Chapter 13 case in 2007, was not credible.

27. Acker's lender ultimately foreclosed on his home. Acker moved to an apartment in Dallas in late 2008. At trial, Acker testified that he lost the documents that he needed to support the expenses claimed in his tax returns when he was evicted from his home. His eviction, however, occurred many years after the IRS had requested supporting documents from him.

### E. Acker's Request for Collection Due Process Hearing

28. On September 20, 2008, Acker requested a collection due process ("CDP") hearing with the IRS regarding his 1998 - 2005 income tax liabilities. Acker indicated on the form he submitted to the IRS that he was seeking to contest the filing of a federal tax lien and notice of levy on his home on the basis that he obtained a Chapter 7

8

discharge in a Chapter 7 case he had filed in the Northern District of Texas in 2008. Acker testified that he filed three Chapter 7 cases during 2008 in order to protect his home from the IRS. However, Acker never received a discharge in any of those cases, and he understood that he had not received a discharge when he submitted the hearing request to the IRS.

29. Acker never intended to appear at the CDP hearing. He requested a CDP hearing solely for the purpose of delay. Acker testified at trial that his purpose in requesting a CDP hearing was to protect his house.

30. On February 12, 2009, the IRS issued a notice of determination regarding Acker's CDP request. The IRS sustained the filing of the notice of federal tax lien and notice of intent to levy, and the IRS determined that Acker was not in compliance with tax return filing requirements and the payment of additional taxes.

  **F.** **Acker's 2009 Bankruptcy Case**

31. On June 23, 2009, Acker filed the present bankruptcy case. In his bankruptcy petition, he listed his address as 19009 Preston Rd #215-222, Dallas, TX 75252. Acker testified at trial that this address is a post office box.

32. In his summary of schedules, Acker listed no totals for assets, liabilities, or amount of creditors' claims. Although his Schedule I shows he had been a systems engineer with Microsoft Corporation for 12 years as of the petition date, and that he was earning gross monthly income of $7,232.66, his summary of schedules lists his income as "0.00." Also in his summary of schedules, Acker listed "0.00" as a total for his current expenditures, contrary to his Schedule J, which shows monthly expenses of $4,818.18.

33. At the meeting of creditors held on July 31, 2009, pursuant to 11 U.S.C. § 341, he claimed that he would be terminated from Microsoft in the next 90 days. Acker

was still employed by Microsoft more than a year later at the time of trial.

    34.    In his 2009 bankruptcy case, Acker filed schedules that showed the following:

    a.    In Schedule B, he noted that his personal property was located at 19009 Preston Road, Suite 215-222, Dallas, TX 75252. This address, as previously discussed, is a post office box. Acker also listed this address as the location of his personal property.

    b.    In Schedule B, he identified no vehicles. For several years prior to bankruptcy, Acker had leased vehicles through his elderly mother, who, according to him, does not drive. In 2003, he was driving a 2003 Acura leased in his mother's name. In 2005, he acquired a new 2005 Infiniti G35 in his mother's name.

    35.    After receiving a discharge from this Court on October 8, 2009, Acker purchased a 2010 Nissan Xterra in his own name.

    36.    Acker has been living a relatively opulent lifestyle and hiding that fact by leasing, rather than purchasing property, and by causing property to be titled in his mother's name. Acker has failed to disclose where he is actually living and where his personal property is really located.

## CONCLUSIONS OF LAW

**I.    Applicable Law**

    37.    Section 523(a)(1)(C) excepts from discharge any debt for taxes "with respect to which the debtor made a fraudulent return or willfully attempted in any manner

to evade or defeat such tax." 11 U.S.C. § 523(a)(1)(C).[1] Section 523(a)(1)(C) is comprised of two disjunctive provisions, one involving fraudulent tax returns and the other involving "willful evasion" of a tax debt. *See, e.g., Scarpiello v. U.S.A. (In re Scarpiello),* 240 B.R. 203, 208 (Bankr. E.D. Pa. 1999). In the instant matter, the United States contends that the debt Acker owes to the IRS should be excepted from discharge under the second part of the discharge exception, *i.e.,* "willful evasion."

37. The United States bears the burden of proof with respect to its claim under 11 U.S.C. § 523(a)(1)(C) in this case. The relevant evidentiary standard is a preponderance of the evidence, *Grogan v. Garner,* 498 U.S. 279, 284-86 (1991), which requires the United States to establish that the existence of a fact is more probably than its non-existence. *Concrete Pipe & Prods. Of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.*, 508 U.S. 602, 622 (1993) (discussing the preponderance standard).

38. In *Bruner v. U.S.A. (In re Bruner),* 55 F.3d 195 (5th Cir. 1995), the Fifth Circuit approved a three prong test for determining whether a tax liability is dischargeable pursuant to § 523(a)(1)(C). In the case of a debtor who is financially able to pay his taxes, a debt is non-dischargeable when the debtor: (1) had a duty to pay the taxes at issue; (2) knew that he had that duty; and (3) voluntarily and intentionally chose not to pay. *Id.* at 197.

39. This test contains both a conduct element (*i.e.*, that the debtor sought to evade or defeat a tax liability) and a mental state element (*i.e.*, that he did so willfully).

---

[1] Debts excepted from discharge under § 523(a)(1)(C) differ from some other debts excepted from discharge under § 523 in that debts excepted under § 523(a)(1)(C) are excepted automatically and a creditor's failure to file a proof of claim or object to the discharge does not affect the dischargeability or non-dischargeability of the debt. A complaint seeking a determination of the non-dischargeability of a debt under § 523(a)(1)(C) may be filed at any time. *See* FED. R. BANKR. P. 4007(b).

11

*See Toti v. U.S.A. (In re Toti)*, 24 F.3d 806, 809 (6th Cir. 1994). The conduct element can be satisfied by acts of commission or by acts of omission. *See, e.g., U.S.A. v. Jacobs (In re Jacobs)*, 490 F.3d 913, 925-27 (11th Cir. 2007) (holding that debtor's chronic late- filing of tax returns, his non-payment of the liabilities reported in those returns, his use of nominees to hold title to his personal residence and vehicles, his payments of luxury expenses such as golf memberships, among other things, supported the conduct element under § 523(a)(1)(C)); *Hamm v. U.S.A. (In re Hamm)*, 356 B.R. 263, 280-83 (Bankr. S.D. Fla. 2006) (holding that debtors' use of nominees to hold title to property for their benefit, extensive dealing in cash, and wrongful deductions of expenses on federal tax returns constituted affirmative acts of tax evasion for purposes of § 523(a)(1)(C)); *Hamer v. U.S.A., et al. (In re Hamer)*, 328 B.R. 825, 834 (Bankr. N.D. Ala. 2005) (holding the conduct element satisfied where debtor earned income during the tax years at issue but did not make any estimated tax payments, had inadequate or no withholdings, and late-filed his tax returns); *Peterson v. U.S.A. (In re Peterson)*, 317 B.R. 556, 563 (Bankr. N.D. Ga. 2004) (holding the conduct element satisfied, in part, where debtor maintained substantial income during the tax years at issue, but "managed to avoid collecting any assets that could be subject to levy by the IRS for his delinquent taxes" by "leasing" cars and "renting" housing from a third-party companion).

40. Courts consider the "totality of the circumstances" in determining whether § 523(a)(1)(C) should prevent the discharge of a debtor's tax debts. *U.S.A. v. Spiwak (In re Spiwak)*, 285 B.R. 744, 750 (S.D. Fla. 2002). Courts have looked to several different factors as indicia of attempts to evade or defeat tax obligations include both acts of commission and acts of omission, including: (i) understatement of income for more than

12

one year; (ii) implausible or inconsistent behavior; (iii) extensive dealings in cash; (iv) failure to cooperate with the IRS; (v) inadequate record keeping; (vi) transfer of assets to a family member; (vii) transfers of assets for inadequate consideration; (viii) transfers that greatly reduce assets subject to IRS execution; (ix) transfers made in the face of serious financial difficulties; (x) failure to acquire significant assets relative to a debtor's earnings; and (xi) any other conduct that is likely to mislead or conceal. *In re Hamm*, 356 B.R. at 276-77.

## II.     Legal Analysis

41.    Here, Acker has been continuously employed by Microsoft for more than 12 years. He is currently a single man with no children and an average annual income of approximately $77,000. Acker had enough income to buy a brand new house and make significant contributions to his retirement accounts in the years preceding his present bankruptcy case, and he could certainly afford to pay his debts to the IRS. The Court, therefore, turns to the three-part test articulated by the Fifth Circuit in *In re Bruner*.

### A.     Conduct Element

42.    Acker engaged in conduct that supports a finding that he willfully evaded payment of the taxes at issue. Acker failed to timely file tax returns for tax years 2001 – 2008. He under-withheld for a number of years, failed to cooperate with the IRS during the audit of his tax returns, and deliberately used bankruptcy filings, an offer to compromise his tax debt, and a request for a CDP hearing from the IRS to delay the collection efforts of the IRS. *See, e.g., Fernandez v. Internal Revenue Service (In re Fernandez),* 112 B.R. 888 (Bankr. N.D. Ohio 1990) (debtor's conduct with respect to tax obligations, including execution of a W-4 which resulted in substantial under-withholding

of income taxes, was both willful and evasive of his tax obligations which were due and owing). Acker hid assets from the IRS by, among other things, leasing vehicles in his mother's name. Moreover, the Form 433-A financial statement that Acker submitted to the IRS in an effort to settle his tax debt for a reduced amount was completely inconsistent with the financial statement he gave to a mortgage lender a few months later in order to purchase a home.

43. In his testimony at trial, Acker admitted providing the IRS with false addresses in his tax returns. Acker also admitted that he used false addresses on his bankruptcy petitions. He argued at trial that there was no law that required him to give his real address or the real location of his assets in his bankruptcy petition and schedules.

44. Acker deliberately manipulated his addresses in order to create an appearance that he had filed his bankruptcy petitions in the proper federal district. His manipulation of venue in his various bankruptcy cases shows a high degree of sophistication. His use of repeat bankruptcy filings to delay the collection of his tax debts, and his strategy of leasing property, such as cars, rather than purchasing assets in his own name, also shows some sophistication.

44. Acker invoked the Fifth Amendment privilege against self-incrimination when asked whether he had filed false tax returns or provided the IRS with false financial information. This Court is entitled to draw an adverse inference from Acker's assertion of his Fifth Amendment rights and refusal to testify at trial. *See* FED. R. EVID. 501 and FED. R. BANKR. P. 9017 (applying the Federal Rules of Evidence to cases under the Code); *Farace v. Indep. Fire Ins. Co.,* 699 F.2d 204, 210 (5th Cir. 1983) (stating the prevailing rule that "the Fifth Amendment does not forbid adverse inferences against parties to civil

14

actions when they refuse to testify in response to probative evidence offered against them.") (citing *Baxter v. Palmigiano,* 425 U.S. 308, 318 (1976)). Here, the Court concludes that it is reasonable to infer that Acker provided the IRS with false information about his personal and business addresses on his tax returns as well as in connection with his offer-in-compromise in an effort to delay or avoid collection of his tax debts.

### B. Mental State Element

45. The mental state element is established by showing the debtor (1) had a duty to pay taxes, (2) knew he had such a duty, and (3) voluntarily and intentionally violated that duty. *Rowen v. US.A. (In re Rowen)*, 298 B.R. 641, 651 (Bankr. D. Alaska 2003) (citing *In re Fretz*, 244 F.3d 1323, 1330 (11th Cir. 2001)). A showing of fraudulent intent is not required. *Id.* (citing *In re Fegeley*, 118 F.3d 979, 984 (3rd Cir. 1997)). *See also In re Jacobs*, 490 F.3d at 924 (state that the standard is "knowledge and deliberateness," as opposed to inadvertence).

#### (i) Duty to Pay and Knowledge of Duty

46. Acker asserted his Fifth Amendment privilege when asked whether he had a duty to pay his taxes and whether he had knowledge of that duty. As previously discussed, this Court is entitled to draw an adverse inference from his assertion of his Fifth Amendment rights. *See Farace v. Indep. Fire Ins. Co.,* 699 F.2d at 210. Moreover, independent evidence, namely, his filing of tax returns for each of the years in question, supports the inference that he knew he had a duty to pay federal income taxes. *See State Farm Life Insurance, Co. v. Gutterman,* 896 F.2d 116, 119, n. 3 (5th Cir. 1990).

#### (ii) Voluntary and Intentional Violation of Duty

47. The preponderance of evidence adduced at trial, together with the

reasonable inferences drawn therefrom, proves that Acker voluntarily and intentionally violated his duty to pay taxes for purposes of § 523(a)(1)(C) of the Code. This is a case in which the conduct itself is circumstantial evidence of intent. In addition to the conduct previously described, specific examples of the circumstantial evidence supporting the Court's findings of willfulness include:

    a.    The IRS audit of Acker's 1998 and 1999 income tax returns showed that Acker claimed personal expenses in excess of $30,000 to minimize his taxable income and that he failed to report income from stock sales. Acker failed to provide information requested by the revenue agent in the audit, he failed to explain the questioned items, and he failed to keep records to support his claimed expenses. Acker's testimony that the IRS did not request documents from him and that he believed he was not required to appear at the meeting with the IRS Examination Division was not credible or supported by documentary evidence.

    b.    In November 2004, Acker gave the IRS a false and misleading financial statement to make it appear that he was financially unable to pay his income tax. In the financial statement he gave to the IRS, he disclosed assets and liabilities with equity of approximately $33,000. However, a few months later, he gave his mortgage company financial statements showing equity in assets, or a net worth, of approximately $137,000.

    c.    Acker was capable of paying a portion of his tax liability in 2005 but, instead, purchased a new home.

    d.    Since October of 2005, Acker has filed six bankruptcies wherein no

   unsecured creditors were paid. These bankruptcies have provided him with the benefit of the automatic stay off-and-on for the past several years.

 e. In early 2008, Acker invested a substantial sum in his 401K and individual retirement account instead of using the money to pay his back taxes. In particular, in Case No. 08-40006 filed on January 2, 2008, he listed the balance of his 401K account as $5,928. In Case No. 08-40790 filed on March 31, 2008, he listed the balance of his 401k as $21,115.

 f. In his CDP request in September 2008, Acker told the IRS that he had received a Chapter 7 discharge in his 2008 case in the Northern District. Acker understood that he had never received a discharge in that case. He made the false statement to the IRS in order to delay its collection efforts.

 g. At the meeting of creditors held in this case on July 31, 2009, Acker told the Chapter 7 Trustee that he would be terminated from his job with Microsoft within 90 days. However, he is still employed there, and he provided no evidence (other than his own self-serving testimony) that he faces any real threat of termination.

## CONCLUSION

The totality of Acker's conduct distinguishes him from the "honest, but unfortunate" taxpayer for whom the bankruptcy discharge is reserved. *See Grogan*, 498 U.S. at 286-87. Based on the preponderance of the evidence, the Court concludes that Acker willfully attempted to evade or defeat his 1998 - 2006 federal income tax liabilities. Therefore, those tax liabilities are excepted from discharge pursuant to 11 U.S.C. § 523(a)(1)(C).

Signed on 9/28/2010

*Brenda T. Rhoades*   SR   17

HONORABLE BRENDA T. RHOADES,
CHIEF UNITED STATES BANKRUPTCY JUDGE